The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention for the Court is now sitting. I save the United States and this Honorable Court. First case will be 2016-51, NREA Capital Broadcasting Company, Inc. Yes, this is Judge King, and I want to welcome everyone to the Fourth Circuit this morning, and in particular, in the first case involving Capital Broadcasting Company, et al. Mr. Tadich, you're up first. I apologize if I mispronounced your name. Your Honor, as we had a preliminary discussion, my last name is actually pronounced Toddy like a hot toddy, but nobody's ever gotten it right. Oh. I'll remember that. I'm glad to have you with us. Great to have you with us. Thank you, Your Honor. May it please the Court, as I said, I'm Mike Toddy. I'm a partner in Stevens, Martin, Vaughn & Toddy, and I will take up to 13 minutes of our allotted time. We will reserve the remaining seven minutes for rebuttal. I'm here today with my friend, mentor, and colleague, Hugh Stevens, and also present, but not on the screen with us, is our esteemed co-counsel, Wade Smith. Together, we are proud to represent the eight news media appellants in this matter. We are delighted to be before you today. Our opening brief outlines five issues presented for appeal at pages one and two. We believe that all remain live. Since the filing of that brief, the Court has asked us to address issues of continuing redactions, developments in the district court, and mootness, and we included a discussion of vacater in our supplemental briefing. At the end of the... So, counsel, what exactly is left to do in this case? Judge Agee, I believe the case remains live. The redactions remain live. The issue that we find most problematic in this case is that the oral order of January 18th, 2019, and the written order of 12 December, 2019, after we filed our state public records action, did not permit a thorough review by this court, and frankly, did not permit us to properly advise our clients as to what was enveloped in these matters. It's the confluence of these two circumstances. But you say, as to what was enveloped in these matters, hasn't what you wanted been unsealed? I mean, I understand there are redactions, but hasn't what you sought been unsealed? Your Honor, we still do not have any of the documents that we requested from the State Board of Elections or the Wake County Board of Elections. As is indicated in our supplemental briefing, the statist and Wake County... Well, if the federal court says that you can get them, it's not up to the federal court to make the state agency turn them over. You've got to go to the state agency. I appreciate that, Judge. What impediment does the federal court have for that now? In lifting the nondisclosure order, Judge Myers indicated that matters pending before the grand jury remain closed, and the state has taken the position, state and the county boards of election, have taken the position in our state court case that they will need to seek the guidance of the federal court before they provide any of those documents. We of course owe it to... The grand jury rules are pretty strict, you know, on not releasing things. Did you all know all along that this was a federal grand jury proceeding? We did not, Your Honor, and that is a problem. When did you find out? It seems to me that that kind of surprises me, you take that position. But there were subpoenas all over the place. Didn't they say something about them, want to say something to the grand jury, have a U.S. attorney name on it or something? Your Honor, there were subpoenas and sweeping subpoenas issued to the boards of election. When we asked for certain documents, we were basically stonewalled. We were told there could be a lot of reasons that they weren't given to us or got no answer. Grand jury is a logical one, the logical one, it would seem to me in that circumstance. We did not know, Your Honor. A grand jury investigation is secret, that's the way it is, and it's time-tried and panic tested, so to speak. Your Honor, I understand that Rule 6 provides with some secrecy of a grand jury proceeding, but it certainly does not involve an incantation of total secrecy. There were no case captions on this, there were no case captions. It says in Rule 6E who's governed by the confidentiality, and that's pretty specific. And one aspect of it that's not governed by confidentiality is witnesses, of course. Correct. As a general proposition, they're not. But what's going on in the grand jury and relating to the grand jury is secret, and if they don't return an indictment, it doesn't come out sometimes. Your Honor, and maybe to provide you with an understanding of my client's perspectives, the appellant's perspectives, under North Carolina law, the records that we requested are public records. I'm confident in that. There is no statutory exemption. I don't disagree with any of that, and that goes back to Judge Agee's question. The issue may be with him. And the other component of the public records law is that the use of a public record in a criminal investigation does not change its character as a public record. The jurisprudence that we've cited in our brief is consistent with that with respect to grand juries. Just because a public record is given to a grand jury doesn't make it secret. But in this case, Judge Boyle entered an oral order at the outcome. Well, I'll go back to my first question. Why do you say they're secret now? I mean, I read these district court orders, and it looks like to me they gave you everything you asked for in the motion to intervene. That's why I'm having a lot of difficulty finding out what it is the court's supposed to do, other than apparently you want an advisory opinion. We don't want an advisory opinion. The case remains live, and if it doesn't, it's certainly capable of repetition, yet evading review. Here, Judge Boyle issued an oral order at the outset of a motion to quash hearing without any findings or consideration. Well, the grand jury investigation is over. I mean, unless you are taking a blanket position that any grand jury investigation somehow entitles you to review, I don't see how you can make a realistic argument that this is going to reoccur. Your Honor, it has occurred before, and I believe it will occur again. The grand jury for the Eastern District regularly issues subpoenas to governmental agencies in North Carolina. Here, we didn't have any concrete facts that that's what was going on, and the parties involved were prohibited from telling us. We didn't get any answers as required under North Carolina law as to why these things were not being produced to us. Our only option— You're saying the defunct had any of these subpoenas, never saw the subpoenas? We certainly saw the original subpoenas issued for what I understand to be— Well, but that subpoena— —in the one that—the subpoena, that it's a grand jury subpoena? Your Honor, I believe it does, but I don't know off the top of my head. Well, but then you all knew all along that it was grand jury subpoenas, and you knew what the rules are for grand jury subpoenas. Your Honor, in hindsight, that may be true. As this case developed, we did not, and no one would confirm that for us. If it says grand jury, you know it's grand jury. I mean, but that doesn't mean that the witnesses are—have cloture on them. But they did, Your Honor, that Judge Boyle prohibited them from talking to us. Judge Boyle is an oral order, but judges do that sometimes from the bench. Understand, Your Honor, but we were privy to that. A lot of judges tell me what I could do and what I couldn't do, and I tried to abide by it without—even though it was oral. I understand, Your Honor. We weren't present for that. I certainly wasn't present for that, nor was Mr. Stevens, and we did not know specifically what it was. I think that's evident in our opening brief, where we are guessing as to what the circumstances are. One of the guesses we made was that this was a grand jury proceeding, and the jurisprudence that we put forth— I think you—see, that's what bothers me. I think you knew it was—they were grand jury proceedings, that you absolutely knew they were grand jury proceedings, and it gave you a start from that premise. And you all don't want to do that. I mean, we're all for freedom of the press. You can count on that, and we always have been in this circuit. I don't doubt that at all, Your Honor. I don't know what to say to you, and that appears you do not believe that I did not know that this was a grand jury proceeding. I did not, sir. What is it you want us to do or think that we can do at this point? I think you can use your supervisory powers in this live case to not have this happen again. There is no reason that the case caption couldn't say— So to not have this happen again sounds like what Judge Agee said, an advisory opinion. Judge Thacker, I agree that— I understand you prefaced it with this is a live case. It is a live case, Judge Thacker. But then you were forward-looking. Well, the problem is that Judge Myers did not totally dispense with whatever issues that have prevented the state board and the Wake County board providing us with these records. They are taking the position that as this case stands now, they still need the federal court's involvement. In this particular case, much of the resources expended could have been avoided if the caption said NRA Grand Jury Subpoena and had a criminal citation to it. We would have advised our clients differently. I can't tell you exactly how we would have advised it. But again, our perspective was this is a fairly cut-and-dried public records case. If these are public records put into a criminal investigation, they remain public, and that doesn't change. Right. But, Counsel, how does that— I mean, we keep asking the same question. How does that affect you now, in the here and now? What is it that you want us to do? We would like, Your Honors, to vacate Judge Boyle's sealing and gag order from the 18th of January 2019 and vacate his nondisclosure order to the extent that it's not already been lifted. Judge Myers was not unequivocal in his lifting of that. We would ask that you use your supervisory powers to establish a clear process in situations like this so as Grand Jury Subpoenas will unquestionably reappear, and secret dockets should not. If this case is moved, it's certainly— Well, if Grand Jury Subpoenas appear, it's going to be in another case. I mean, this Grand Jury's over. Right, Your Honor, but redactions still persist, and there's apparently information that we're not privy to. So in that case, I mean, we review redactions, and if the redacted documents appear appropriate to us, that's the end of it. I understand, Your Honor, and that's certainly what we requested in one of our supplemental briefs at the invitation of the court. At the end of the day, Your Honor, we believe that the appropriate thing would have been for Judge Boyle to indicate in his orders what these proceedings were, and we could have so advised our clients. I understand that the Grand Jury is over. I'm sorry, Judge Case. You're concerned that Judge Boyle wouldn't tell you that it was a Grand Jury investigation? No one would tell us. But you said you had seen the subpoenas. Your Honor, I was aware that the subpoenas had been issued to the boards of election. I did not know that they had any connection with why the boards of election would not provide us with the public records. Nor did Mr. Stevens, nor did Mr. Smith. But they're Grand Jury, aren't they? I'm sorry, Your Honor. They're returnable to a Grand Jury, and they're signed by the prosecutor, the United States Attorney for Eastern North Carolina. I understand that, Your Honor. We had no idea that that's what was involved in this case until April of this year. With that, Your Honor, I would ask that the remainder of my time be yielded to Mr. Stevens for a book. Thank you. Thank you. Thank you, sir. Mr. Anderson? Yes, Your Honor. Thank you. May it please the Court, my name is Michael Anderson, and I represent the United States. First and foremost, as this Court has indicated, this case is moot. The Grand Jury investigation underlying this appeal is over. The nondisclosure orders, the sealing order at issue on this appeal have been lifted in their entirety. There are some redactions that remain, but all of those are based on independent grounds, not founded in the sealing order. They are not founded in the nondisclosure order. The United States has explained those independent bases, both at the district court level and here on appeal. Respectfully, the United States does not believe that there is anything more for this court to do, or for that matter, for the district court to do, to effectuate meaningful and practical relief for the media in this particular case. There may be some prospective relief that this court could provide. There may be some prospective relief that the district court can provide, but none of that makes this case any less moot than it already is. Are you resting your position on mootness, ma'am? Well, Your Honor, I think that is a threshold issue. Are you giving up this notice of appeal issue about being filed late? Your Honor, that still is an issue on the notice of appeal. And how could that be an issue when the rule says the defendant has to file a notice of appeal within the time frame? That's what you're relying on, a rule that says the defendant. None of these parties were defendants. They were not, Judge, and I recognize that that is a weakness in the government's argument. And the rule says defendant. It does. It absolutely does. The government's position on the 14-day deadline is that this was a criminal matter. The United States recognizes that the rule references a defendant, but this court, in a prior opinion, has indicated that appeals arising from grand jury actions or from grand jury investigations are criminal matters. And for that reason, the United States believes that the 14-day deadline is a criminal matter. And that the 14-day deadline does apply. But even setting aside the motion to dismiss on the notice of appeal timeline, the United States submits at this point, now that the grand jury investigation has ended, now that the nondisclosure order has been lifted, the sealing order has been lifted, that the case is moved. And it is not one that is capable of repetition, yet evading review. The United States believes that that is the case for three reasons. And although the United States briefed both of the prongs of that exception in its briefing. I'm sorry, go ahead. I was just clearing my throat. No problem, Your Honor, thank you. I want to focus on the second prong of that exception, which is whether there's a demonstrated probability that this is likely to recur again. And I want to emphasize in that regard that grand jury subpoenas in the Eastern District of North Carolina, and I think probably throughout the United States, typically are not accompanied by a nondisclosure order. The case law makes clear that nondisclosure orders are rare and exceptional. The only reason the United States. They very much shouldn't be, because the rule decides, sets forth who is governed by confidentiality. Rule 6E. And the nondisclosure orders expand that, right? The nondisclosure orders do expand that. They are not prohibited under Rule 6E, but the United States recognizes that typically grand jury witnesses are not subject to nondisclosure orders. Typically, they can reveal what they've told to the grand jury or what they have. Under Rule 6E, the witnesses aren't subject to keep their mouth shut. That is true. Typically, Your Honor, that is absolutely true. But the United States believes that those orders can be issued when there are compelling necessities for them. And here there were compelling necessities. The media did not make an innocuous records request that just so happened to coincide with documents that have been put before the grand jury. Instead, the media requested voter records from 32 counties in the Eastern District of North Carolina precisely because the State Board of Elections had instructed those county boards to gather the records pursuant to the grand jury subpoenas in preparation for making a production to the grand jury. The media then submitted a public records request that said, well, State, give us what you're giving to the grand jury. Fulfilling that request with that context necessarily would have disclosed a matter occurring before the grand jury in an ongoing grand jury investigation. And these were documents that were about to be or were at that time put before the grand jury was still looking at. Disclosing those would have disclosed the focus of the grand jury investigation, its direction at that particular point, maybe even its scope or its timing. And as the government reads the media's request, it was evidently for unredacted versions of those documents, which also would have, of course, disclosed the names of the people on those documents, which at that time could have been targets or subjects or witnesses in the grand jury investigation. All of that is a matter occurring before the grand jury, which both the Supreme Court and this court have recognized, the protection of which is a compelling government interest. But even setting aside. But the protection is provided by Rule 6E and it doesn't reach what you're talking about. You want to go to 6E. I'll be honest with you, I don't have much sympathy for the government wanting to stretch that out. I mean, the grand jury rule is the grand jury rule. And we'd all be better off. Everybody abides by it. Your Honor, the government certainly understands the court's concern and the court's position. Respectfully, Your Honor, the United States is litigating position is that Rule 6E does not preclude a nondisclosure order against a grand jury witness. The United States does acknowledge that those are rare and exceptional. And as this court noted, they should be. But when the government can show that a nondisclosure order is supported by compelling necessities, which it is in this case, for all the reasons that I've explained, as well as when it is narrowly tailored and the least restrictive means available. In other words, when it complies with strict scrutiny, the district court is authorized to impose a nondisclosure order, which is effectively a content-based speech restriction. But so long as those content-based... It would be subject to our subject to immediate review. To immediate review? Appealable. They would be. They just weren't here. So you agree that when you get them, they're subject to strict scrutiny, review, and immediate appeal? Yes, Your Honor. I would note... Did you all take that position in these proceedings before Judge Moyle? I don't think the issue of appealability came up on the nondisclosure orders because the state did not oppose them. As for whether the nondisclosure orders were subject to strict scrutiny, the United States is briefing discussed primarily the compelling necessity component. And the reason for that is because the circuit courts that have analyzed nondisclosure orders in the grand jury context, actually the court seemed to apply something slightly less than strict scrutiny. They do require compelling necessity. You're the one who brought scrutiny. I mean, you said earlier that it was subject to strict scrutiny. And that is the government's position, Your Honor. The United States believes that they should be subject to strict scrutiny. I'm just simply noting for the court what the case law would seem to indicate, which is why the United States focused on the compelling necessity component of it at the district court level. Counsel, let me ask you about a point that the opposing counsel raised. He indicated that the State Board of Elections was resisting turning over the documents in the belief that it needed some further clarification from the district court, though I think I read somewhere that the state court said that it was good to go. What's your reaction to that argument? And is that really germane to our discussion? Well, to answer the end of that question, the United States does not believe that it is germane to this discussion. To the extent that the district court has issued an order indicating that its seal pursuant to 6E continues to extend to matters occurring before the grand jury, that order has not been appealed. The United States, as I noted initially, does not believe that the original sealing order from January of 2019 is still in effect. That is the government's position. It is not in effect. The nondisclosure orders that the United States sought and for which it sought extensions, those are not in effect. Again, that's the United States' position. They are not in effect. And why are they not in effect? Where do we look to see that those are no longer in effect? The – in the supplemental appendix, Your Honor, that the parties filed in connection with the commuteness briefing, the parties provided the district court's orders explaining that the nondisclosure order was lifted, explaining that the sealing order was lifted. The United States recognizes that there is that catch-all language at the end of the court's orders. But respectfully, the way the government interprets that language is that that is intended to for the grand jury, such as hypothetically if there were grand jury transcripts from witnesses who testified, if there were other documents, other grand jury materials. In other words, it's an indication that even though the seal on these ancillary proceedings, even though the nondisclosure orders against the state boards have been lifted, that it's not sort of a blanket invitation to go perusing through the grand jury's records, which is consistent with Rule 6e. But other than – other than the caveat of matters that were within the breast of the grand jury, you can represent to the court and to opposing counsel that you have no opposition to the Board of Elections releasing all the other documents? That is correct, Your Honor, with one potential caveat, which is that to the extent that the media seeks the names of the individuals on those documents, the United States would oppose the disclosure of those names to the extent those individuals were subject to the grand jury investigation. But the documents themselves, the United States does not believe are still subject to a sealing order or a nondisclosure order. Do you have a nondisclosure order for that exception you just recited? We do not, Your Honor. Or is that your redactions you're talking about? No, ma'am, that is not the redaction. So the redactions are to the filings in the district court, as well as the filings in this court. To the extent that the state is holding voter records, right, that would list the names of the individuals on those records, to the extent those individuals were investigated, the United States believes that that is a matter occurring before the grand jury if those individuals were investigated. You want us to grant you a nondisclosure order on that? You want affirmative relief on appeal that goes beyond Rule 6E? Your Honor, I don't believe that's what the- I don't know what- I'm having a hard time with that. Why can't you just say yes to Judge Agee's question, that these nondisclosure orders are gone? The nondisclosure orders are gone. The United States is not asking for a new nondisclosure order. But you just asked for one. Well, I'm not asking for that. Sorry, Your Honor, I didn't hear that question. I said you want us to ask to grant you a nondisclosure order that you just recited to Judge Agee. The government is not asking the Fourth Circuit, this panel, to issue a nondisclosure order as to the voter records. I was simply trying to answer Judge Agee's question that the United States does not believe that the nondisclosure orders or the original sealing order are still in effect. Those orders don't prohibit the- And why is the original sealing order not in effect? I understand the nondisclosure order was lifted, but why is the original sealing order not still in effect? Where was that lifted? That was unsealed in April of this year, Your Honor. The court entered an order, I believe, in February or March explaining that as of the end of March, the seal on the ancillary proceedings, which was what the sealing order pertained to, that that was lifted. Is that the March 9, 2021 order from Judge Myers? Yes, sir. All right. So with the March 9, 2021 order and the nondisclosure order being lifted, it sounds like everything is moot, except that when you keep talking, it sounds like you're talking yourself out of mootness because you want us to still withhold, you want the federal courts to still withhold something from appellants that are outside of your redactions. You're talking about names and stuff that you didn't want the state to give over in response to Judge Agee's pretty straightforward question that I would have thought you would have just said yes. Understood, Your Honor. What I was trying to clarify, and forgive me for being inartful about it, is that when occurring before the grand jury remains sealed, which I believe is consistent with Rule 6E, that one of those matters occurring before the grand jury is the identity of the people investigated who may not have been charged with a crime. So it doesn't necessarily— But what about the names on the records that were subpoenaed? You said you wanted us to keep them from being disclosed. The United States does want to keep those names from being disclosed. I'm not necessarily asking this court. But if names are on public records maintained by the state, the issue is between the press and the state. Under Rule 6E, you don't have any right to get that unless you get one of these so-called nondisclosure orders. That extends—that expands Rule 6E. And you're saying you gave all that up. To make this thing moot, you've got to give all that up. Don't you see? I do see, Your Honor. And I fully understand the court's point. I wasn't trying to suggest that the United States intends to move for that kind of nondisclosure order or is asking this court. Judge Agee's question— Well, it seems like to me, counsel, that the pertinent point is that if there's something that you think shouldn't be disclosed that goes beyond the redactions that we have before us, you're going to have to go back into court and convince either the federal district court or the state court to do that. Agreed. Because I don't see a basis in this March 9th order for you to assert anything beyond what's in your redactions unless you get another court order. That order's not before us because it doesn't exist. Understood, Your Honor. And the United States does not dispute that. The United States would, if it wanted to object, would go back to the district court and file another motion to withhold that information. I was simply trying to answer the court's question in a broader sense about whether the government has any concerns or objections to producing the records. The government sitting here today may have those concerns or objections, but it's not moving for an order in this court. And I don't know necessarily that we have plans to make that order in the district court either. But in any event, Your Honors, for all of the reasons that I've explained in the government's briefing, for all the reasons we've discussed today, the United States would respectfully submit that this case is moot. To the extent it's not, the United States respectfully requests the court affirm the district court decisions. Thank you all for your time. Any further questions? No questions. No, thank you. Yes, sir. Thank you. We appreciate you. Mr. Stevens, are you out there? Yes. Thank you, Your Honor. First of all, I'm having trouble understanding, I think, as you are, exactly what the government's position is about the scope of the redactions and how they affect the state court proceeding. If the government can go back and ask the district court for further orders to try to prevent the disclosure of the names of people whose names are admittedly on public records, public voter registration records in North Carolina, how is the case moot? It seems to me they want to have their cake and eat it too. Well, but they haven't asked for any of those orders. We don't know that they ever will. And we don't know what the grounds would be if they did ask for such an order. Well, absolutely. And I agree, Your Honor, I don't think there would be grounds because under our law, under state law, voter registration records are public records and there's no statutory or other exemption for them. So if we get the records, we'll get the names. And so, but I'm confused about the government's position here. I'd like to take just a minute to invite the court's attention to a case that the government actually cited, which is the Florida case at H-64 F-Second 1559, where the University of Florida that was the subject of a subpoena and they felt that under Florida's public records law, they needed to disclose the fact that they were opposing the subpoenas and what the proceedings were. The difference in that case is that the district court in that case allowed the media groups who were concerned to intervene. Now, to be sure, the court then proceeded to enter a sweeping nondisclosure order, but at least they had, the media had the opportunity to question the scope of that order or to argue about the scope of it and to participate. Here, the problem is that we filed a public records lawsuit against state entities. The state entity said, we can't give you those records. And we said, why not? And they said, we can't tell you why not. And so we were in this total catch-22 situation. And then it finally came out that they said, well, here's why not. And they gave us an order signed by Judge Boyle. It had no caption, no names, no numbers, no anything, and a conclusory ruling that basically said everything in this is sealed and you cannot. And of course, then we also found out that he had entered a gag order in effect that had prohibited even explaining what the matters were all about. So we were denied the opportunity, unlike the parties, the intervenors in the Florida case, even to question the scope of the nondisclosure order, which, as Judge King appropriately points out, is always subject to strict scrutiny and which should have been the subject, in our view, of a very careful delineation by Judge Boyle. But instead of issuing a narrow nondisclosure agreement, which is what the law requires, that it be as narrow and tailored as possible, he just entered a sweeping order that we had no opportunity to discuss with him, no opportunity even to understand in what context it was being entered. So we are here, we're appealing that because we don't believe this record gives you any discern and to rule whether the nondisclosure order that the Judge Boyle entered was appropriate in being properly tailored and properly, he didn't find facts that made it necessary. And so we have- So then what is it, Mr. Stevens, that you would like us to do? We would like you to vacate those orders because they didn't comply with Fourth Circuit precedent about meeting the standards that Judge King has so clearly delineated. Well, the March 9th order says all records currently preserved by the Board of Elections, the 44 county boards of elections in the Eastern District of North Carolina, and the North Carolina Division of Motor Vehicles pursuant to the grand jury subpoenas shall be released from those subpoenas. That seems to be pretty clear, at least to me. Well, I don't- I mean, that's what the court order says. I don't believe, I don't interpret the March orders as specifically and clearly lifting either the sealing order or the order prohibiting the discussion of the case by counsel or the parties. I think Judge Thacker's question about that is appropriate, that how do we know, how do you, how, where in this record does it clearly show that these, the non-disclosure order is completely lifted and no longer in effect? Well, it just says they'll all be released. I'm sorry, Your Honor, I didn't hear you. What I just read to you was that all the records shall be released from the subpoenas. And the government has represented that the extent there's any other type of non-disclosure or gag order, that that no longer exists. Well, the oral order that prohibited the parties and their counsel from even disclosing to our public records request is not the subject of those orders as I understand it. I understood Mr. Anderson to say that all those non-disclosure and sealing orders have been lifted. And he's the spokesman for the United States of America to this court. Now, if we accept that, I don't think that the government has any room to do anything adverse to you. Well, Your Honor, I think my time has expired, so. You can respond to that, you can respond to that if you'd like, absolutely, go ahead. Well, if in fact they have been completely lifted, I don't understand Mr. Anderson's position that further involvement of the district court may be required or appropriate here. Now, he says we don't know whether we're going to ask for it, but even to say that they are in a position where they're entitled to ask the district court to make further rulings these records suggest to me that it's not smooth at all. Well, if we misunderstood him, I assume he'll tell us so, either now or pretty soon. Again, I think my time has expired and I think the court has appropriately raised the right here does or does not show about the propriety and the scope of the orders that Judge Boyle entered. He could have entered those orders in an appropriate fashion, but by acting summarily and the way he did, he left us with no clear understanding at all as to what was going on. Now, it's still not absolutely clear to us as to how this affects our ability to pursue these records in the state court in North Carolina, because the state entities are saying that they feel that further involvement and further orders from the district court, perhaps in the nature of clarification, are required. Well, then that's the district court though. That's not us. Well, again, I don't want to belabor things we've already talked about. You've been kind to listen to the arguments and I'm over my time, but I was simply saying that I think what this really does show that this could happen again and that this court should and can take steps by vacating the prior, the orders in question to see that they don't, it doesn't happen again. It's not, there's no question that with a district court can enter a non-disclosure order, although as Mr. Anderson acknowledges, it's a very rare circumstance where they do that, but it should be done in a fashion that allows meaningful review, both by us as our clients as potential intervenors and by you as the supervisory court. I think the confusion we're all talking about here is simply stems from the fact that the court didn't go through the proper steps to actually narrowly tailor his order, orders, or to allow enough information to be public so that the public and news media and anyone looking from the outside could understand what was going on. Thank you, Mr. Stevens. Well, again, thank you for your indulgence and I hope I didn't take up too much time. Thank you for your attention to this argument. This is certainly an unusual case and we appreciate the opportunity to talk to you about it. Thank you. Thank you. Good to have you with us. Mr. Anderson, you out there? Yes, sir. Do you have anything further you want to say? Your Honor, may I briefly respond to your question from a few minutes ago on the government's position about unsealing and non-disclosure? And you mean my question and I would include Judge Agee's in that too. Yes, Your Honor. If you have something further to say, I'm going to give you an opportunity to do so. Thank you, Your Honor. If we misunderstand you, we don't want to do that. Thank you, Your Honor. You do not misunderstand the government. The government's position is that the non-disclosure order has been lifted in its entirety. That's Supplemental Joint Appendix 1. The government's position is also... Let me say non-disclosure orders. If there are any others, including oral orders, if there's any non-disclosure orders, any and all, they've been lifted, right? Yes. Okay. And sealing orders have been lifted? Yes, sir. That is Supplemental Joint Appendix pages 6 through 7. Okay. To the extent that the government would oppose the disclosure of the name, this is the point I was trying to make very poorly before, the United States believes that it would have to go back to federal court to obtain a new order. I cannot say definitively that the government wouldn't do that. I would note, however, for the court that since this case has been unsealed in March or April, the United States has not made that motion. Well, you're qualifying yourself and you may be undermining your mood disargument. Okay. You're getting up here and telling us there's a likelihood of repetition. Yeah. After some of it, there's no likelihood of repetition. Right. All right. Understood, Your Honor. Then let me take out the qualification. The United States does not intend to make that motion. Don't take out the word intend. Tell us you're not going to. The United States is not going to make that motion. Judge Agee, Judge Thacker, are you all satisfied with your other questions for him? I have no further questions. I don't have any either. Thank you very much, sir. Thank you, Your Honors. Madam Clerk, we appreciate the council being with us and want to thank all of you for your work in this case. And I'm sorry we can't leave the bench and as we would in Richmond and normal times and come down and shake hands and congratulate you, but we can't do that. We'll do it next time and we'll welcome you to Richmond. Good to have you with us. Thank you, Your Honor. Thank you, Your Honors. Appreciate it very much.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker